[971 NE2d 341, 948 NYS2d 211]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v DERRICK GAUSE, Appellant.

Argued April 24, 2012; decided June 5, 2012

**POINTS OF COUNSEL**

*Davison Law Office PLLC*, Canandaigua (*Mary P. Davison* of counsel), for appellant. I. Mr. Gause's right to be free from double jeopardy guaranteed under the New York State and United States Constitutions and the Criminal Procedure Law, was violated by retrial of the intentional murder count. (*People v Contes*, 60 NY2d 620; *Matter of Suarez v Byrne*, 10 NY3d 523; *Wade v Hunter*, 336 US 684; *Benton v Maryland*, 395 US 784; *People v Aguilera*, 82 NY2d 23; *People v Acevedo*, 69 NY2d 478; *People v Goodman*, 69 NY2d 32; *Ashe v Swenson*, 397 US 436; *Matter of Juan C. v Cortines*, 89 NY2d 659; *People v Plevy*, 52 NY2d 58.) II. Since there had been a prior determination by the first juries that Mr. Gause acted with a different mens rea than his codefendant, the doctrine of collateral estoppel barred reprosecution on a theory of accomplice liability. (*People v Rossey*, 89 NY2d 970; *People v Hafeez*, 100 NY2d 253.) III. Mr. Gause was denied his right to effective assistance of counsel at both trials below. (*Strickland v Washington*, 466 US 668; *Hill v Lockhart*, 474 US 52; *Murray v Carrier*, 477 US 478; *United States v Cronic*, 466 US 648; *People v Ennis*, 11 NY3d 403; *People v Benevento*, 91 NY2d 708; *People v Baldi*, 54 NY2d 137; *People v Turner*, 5 NY3d 476; *People v Ortiz*, 76 NY2d 652; *People v Lane*, 60 NY2d 748.) IV. The conviction was not based on legally sufficient evidence that Mr. Gause acted with the intent to kill, or that his actions caused death. (*People v Bleakley*, 69 NY2d 490; *People v Contes*, 60 NY2d 620; *People v Gonzalez*, 1 NY3d 464; *People v Payne*, 3 NY3d 266; *People v Patterson*, 39 NY2d 288, 432 US 197; *People v Wallace*, 217 AD2d 918; *People v Bracey*, 41 NY2d 296; *People v Cobb*, 72 AD3d 1565; *People v Geddes*, 49 AD3d 1255, 10 NY3d 863; *People v Massey*, 61 AD3d 1433.) V. Contrary to its conclusion, the intermediate appellate court was not barred from reconsideration of the double jeopardy issue based on law of the case. (*Matter of Suarez v Byrne*, 10 NY3d 523; *Aridas v Caserta*, 41 NY2d 1059; *Faricelli v TSS Seedman's*, 94 NY2d 772; *People v Willette*, 73 AD3d 1278; *People v Harrison*, 85 NY2d 794.)

*Michael C. Green, District Attorney*, Rochester (*Kelly Christine Wolford* of counsel), for respondent. I. Defendant's retrial for intentional murder was not in violation of the principles of double jeopardy, collateral estoppel, or CPL 40.20. (*Green v United States*, 355 US 184; *Matter of Suarez v Byrne*, 10 NY3d 523; *People v Jackson*, 20 NY2d 440; *People v Charles*, 78 NY2d 1044; *People v Biggs*, 1 NY3d 225; *People v Goodman*, 69 NY2d 32; *People v Lo Cicero*, 14 NY2d 374; *People v Acevedo*, 69 NY2d 478; *People v Hawkins*, 11 NY3d 484; *People v Gray*, 86 NY2d 10.) II. The People were not precluded from arguing that defendant acted as an accomplice in the murder of Whitney Morris under the doctrine of collateral estoppel. (*People v Goodman*, 69 NY2d 32; *Ashe v Swenson*, 397 US 436; *People v Berkowitz*, 50 NY2d 333.) III. Defendant received effective assistance of counsel under both the New York and federal standard. (*People v Schulz*, 4 NY3d 521; *Strickland v Washington*, 466 US 668; *People v Flores*, 84 NY2d 184; *People v Kroemer*, 204 AD2d 1017; *People v Baldi*, 54 NY2d 137; *People v Satterfield*, 66 NY2d 796; *Rosario v Ercole*, 601 F3d 118; *People v Turner*, 5 NY3d 476; *People v Rivera*, 71 NY2d 705; *People v Grayson*, 266 AD2d 740.) IV. Defendant's conviction of intentional murder is supported by legally sufficient evidence. (*People v Danielson*, 9 NY3d 342; *People v Sala*, 95 NY2d 254; *People v Dekle*, 56 NY2d 835; *People v Bracey*, 41 NY2d 296.) V. The Appellate Division, Fourth Department, properly held that it was bound by its prior decision in *People v Gause* (46 AD3d 1332 [2007]) under the law of the case doctrine. (*People v Willette*, 73 AD3d 1278; *People v Riley*, 22 AD3d 609; *Matter of Suarez v Byrne*, 10 NY3d 523.)

**OPINION OF THE COURT**

JONES, J.

In this case, where the defendant's conviction for depraved indifference murder was reversed on appeal, the issue before this Court is whether, in accord with the principles of double jeopardy, defendant was impliedly acquitted of intentional murder when the jury was instructed to consider intentional murder and depraved indifference murder in the alternative, but that it could return a verdict on only one of the offenses. Because the first jury had a full opportunity to return a verdict on both inconsistent charges, defendant was impliedly acquitted of the other count when the jury convicted defendant of the depraved indifference murder and his second trial for intentional murder twice placed defendant in jeopardy for the same offense.

On January 26, 2002, after a dispute with Whitney Morris at a 7-Eleven in the City of Rochester, defendant and Timothy

Lundy followed Morris and his friends to a nearby residence. After a fight between the two groups was defused, defendant and Lundy left. They returned to the residence shortly thereafter, and Lundy shot Morris. Defendant struck the victim on his head with a metal pole as he lay on the ground. The victim died from his injuries.

Defendant was ultimately prosecuted twice for the victim's death. The original indictment charged defendant with intentional murder in the second degree, depraved indifference murder in the second degree and intentional assault in the first degree.[1] At the close of trial, the court instructed the jury as follows:

> "the indictment contains two counts, both of which charge murder in the second degree. There are two separate charges based upon two separate subdivisions of the same statute; that is, two different theories of how the crime was committed. However, under the circumstances of this case, essentially because there is only one death, the defendant may only be convicted of one of the charges and not both. In your deliberations, you may consider the charges in any order you wish, thus you may start with either Count 1 or Count 2. However, regardless of which count you consider first, if you should find the defendant guilty of such, you will stop right there and you will not go on to consider the other count. Only if you should find the defendant not guilty of the first count or the second, if that's what you start with, will you then go on to consider the other count."

The court then defined intentional murder and depraved indifference murder. During deliberations, the jury requested, by jury notes, that the court "[r]epeat the two elements of the first charge (with intent) along with the following instructions for those elements" and whether either charge required defendant to have "swung the pipe" to be guilty. These notes prompted the court to reread the substantive jury charges. The jury subsequently convicted defendant of depraved indifference murder.[2]

---

1. The intentional assault charge was dismissed, on motion of the prosecutor, prior to trial.

2. Lundy was also charged with intentional murder and depraved indifference murder. However, a different jury convicted him of intentional murder. That conviction was affirmed (48 AD3d 1046 [4th Dept 2008]).

The Appellate Division reversed the judgment of conviction on the ground that the evidence was legally insufficient to support the conviction of depraved indifference murder, dismissed count two of the indictment and ordered a new trial on count one (46 AD3d 1332 [4th Dept 2007]). The court concluded that the "jury never considered the intentional murder count" and, as such, "agree[d] with the People that double jeopardy does not preclude a new trial on that count" (*id.* at 1333). It further directed that the certificate of conviction "be amended to reflect that the jury did not" acquit defendant of intentional murder (*id.*).

Defendant was retried and convicted, after a jury trial, of intentional murder in the second degree. The Appellate Division affirmed, holding that its "prior decision is the law of the case" (81 AD3d 1293, 1294 [4th Dept 2011]).

A Judge of this Court granted defendant leave to appeal (17 NY3d 795 [2011]). Defendant contends now, as he did below, that double jeopardy barred the retrial of the intentional murder charge even though the jury verdict had not specifically indicated an acquittal on that count. We agree. Because the first jury had before it counts of depraved indifference murder and intentional murder—inconsistent counts—and it reached a guilty verdict on one, that determination necessarily acquitted defendant of the other crime and, therefore, double jeopardy barred the People from reprosecuting defendant for it.

"No person shall be subject to be twice put in jeopardy for the same offense" (NY Const, art I, § 6; *see also* US Const 5th Amend). The Double Jeopardy Clauses of our State and Federal Constitutions specifically guard against a defendant twice being tried for the same offense (*see Matter of Suarez v Byrne*, 10 NY3d 523, 531 [2008]; *People v Ferguson*, 67 NY2d 383, 387 [1986]). At its core, double jeopardy precludes "the government from prosecuting a [defendant] for the same offense after an acquittal or a conviction;[3] or from imposing multiple punishments for the same offense in successive proceedings" (*Matter of Suarez*, 10 NY3d at 532).

---

**3.** The dissent's reliance upon *Blueford v Arkansas* (566 US —, 132 S Ct 2044 [2012]) is misguided as the first of two trials concluded in a mistrial. In that case, the first jury deliberated on four charges. The trial court instructed it either to convict the defendant of one of the charges or acquit him of all of them. The jury could not reach a verdict. After the court inquired about the jury's progress, the foreperson disclosed that the jury had unanimously agreed to acquit defendant of the top two counts, but still needed to resolve the remaining charges. The trial ended in a mistrial, however, as the jury had never reached a verdict. The defendant argued that double jeopardy barred
(n. cont'd)

The United States Supreme Court has long recognized that, there are cases in which "[i]f a conviction might have been had, and was not, there was an implied acquittal" (*In re Nielsen*, 131 US 176, 190 [1889]). In *Matter of Suarez*, we remarked that "[t]he implied acquittal bar to reprosecution presupposes that the first jury 'was given a full opportunity to return a verdict' on the particular charge that the prosecutor seeks to advance in the second trial" (10 NY3d at 532 [citations omitted]).

Here, the first jury was given a full opportunity to return a verdict on the intentional murder charge and it impliedly did so when it convicted defendant of depraved indifference murder. Depraved indifference murder and intentional murder in the second degree are inconsistent counts, as "guilt of one necessarily negates guilt of the other" (*People v Gallagher*, 69 NY2d 525, 529 [1987]; *see* CPL 300.30 [5]). When these two charges are submitted to the jury in the alternative, a guilty verdict upon one necessarily requires an acquittal upon the other and a jury should be so instructed (*see* CPL 300.40 [5]).[4] As the trial court instructed, before the jury were two counts, "two different theories of how the crime was committed," but it could only convict the defendant of one of the counts. The jury concluded that defendant acted recklessly in the murder of the victim, rather than intentionally. The jury, which sought instruction on both charges, necessarily rejected the theory that defendant intentionally murdered the victim when it convicted defendant of depraved indifference murder. As such, the jury impliedly acquitted defendant of intentional murder. Thus, defendant's

---

his reprosecution on the top two charges. The United States Supreme Court rejected the defendant's argument, observing that the "foreperson's report was not a final resolution of anything" (566 US at —, 132 S Ct at 2050). The Court explained,

> "[t]he jury in this case did not convict [the defendant] of any offense, but it did not acquit him of any either. When the jury was unable to return a verdict, the trial court properly declared a mistrial and discharged the jury. As a consequence, the Double Jeopardy Clause does not stand in the way of a second trial on the same offenses" (566 US at — ,132 S Ct at 2053).

4. A court may submit to a jury two inconsistent counts in the alternative, if the counts can be supported by legally sufficient evidence, but "must direct the jury that if it renders a verdict of guilty upon one such count it must render a verdict of not guilty upon the other" (CPL 300.40 [5]). Had the jury been instructed under section 300.40 (5), there would be no issue concerning implied acquittal because the jury would have found defendant not guilty of intentional murder. The court's oversight in failing to give the instruction did not change the underlying principle that conviction of one count entails acquittal of the other.

subsequent retrial on the intentional murder charge, after the reversal of his depraved indifference murder conviction, is prohibited under double jeopardy.[5]

In sum, defendant should not have been prosecuted twice for intentional murder in the second degree. Because no charges from the original indictment remain unconsidered, and no lesser included offenses were submitted to the jury, we are constrained, pursuant to the principles of double jeopardy, to reverse the conviction and dismiss the indictment *(see People v Taylor*, 15 NY3d 518 [2010]; *Matter of Suarez*, 10 NY3d at 541; *People v Biggs*, 1 NY3d 225 [2003]).

Accordingly, the Appellate Division order should be reversed and the indictment dismissed.

PIGOTT, J. (dissenting). Because in my view the jury at the first trial was not afforded "a full opportunity to return a verdict" on the count of intentional murder *(Matter of Suarez v Byrne*, 10 NY3d 523, 532 [2008]), defendant's subsequent trial on that count did not violate double jeopardy and his conviction for that offense should stand.

At the first trial, the court charged the jury, *without objection*, that

> "you may consider the charges in any order you
> wish, thus you may start with either Count 1
> [intentional murder] or Count 2 [depraved indiffer-
> ence murder]. *However, regardless of which count
> you consider first, if you should find the defendant
> guilty of such, you will stop right there and you will
> not go on to consider the other count.* Only if you
> should find the defendant not guilty of the first

---

**5.** This case is wholly distinguishable from *People v Jackson* (20 NY2d 440 [1967]), where the Court rejected the application of implied acquittal to the circumstances of that case. There, the defendant was convicted of common-law murder in the first degree, but the jury was silent as to felony murder. After his judgment of conviction was reversed based upon the voluntariness of his confession, a new trial was ordered, and the defendant was retried on the original indictment. After the second trial, the jury convicted the defendant of felony murder. The *Jackson* Court concluded that the "defendant was not twice put in jeopardy . . . [for] felony murder" *(id.* at 453). It rejected the application of implied acquittal in that case because the jury had not necessarily considered the felony murder charge. That case is consistent with this holding as it did not involve inconsistent counts where, statutorily and logically, "guilt of one necessarily negates guilt of the other" *(Gallagher*, 69 NY2d at 529; *see also* CPL 300.30 [5]).

count or the second, if that's what you start with, will you then go on to consider the other count. Of course, you may find the defendant not guilty of both counts" (emphasis supplied).

Before the jury read its verdict, the court asked the foreperson which count the jury considered first, and he responded, "Count 2." The jury found defendant guilty of depraved indifference murder. The Appellate Division reversed defendant's conviction in the interest of justice so that this defendant could be retried on the intentional murder count.

The majority assumes, based on the fact that the jury sought instruction on both charges, that the jury considered the intentional murder count during its deliberations. But it is well-settled law that "[j]urors are presumed to follow the legal instructions they are given" (*People v Baker*, 14 NY3d 266, 274 [2010]), and, here, the foreperson apprised the court that the jury considered the depraved indifference murder count first. For all we know, the jury asked for a recharge on both counts so it could determine which count it should consider first. The majority's conclusion that the jury must have considered the intentional murder count, thereby "impliedly" acquitting defendant of that charge by finding him guilty of depraved indifference murder, is purely speculative.

In *Blueford v Arkansas* (566 US —, 132 S Ct 2044 [2012]), the foreperson informally apprised the court that the jury had unanimously concluded the defendant was not guilty of the top two murder counts and split on the third count but did not reach the fourth. The jury thereafter resumed deliberations for a half hour and the court declared a mistrial when the foreperson told the court that the jury could not reach a verdict. The United States Supreme Court held that double jeopardy did not bar the defendant's retrial on the top two counts because "[t]he foreperson's [initial] report was not a final resolution of anything" because when she apprised the court as to how the jury voted "the jury's deliberations had not yet [been] concluded" (566 US at —, 132 S Ct at 2050). The continuation of the jury deliberations after the initial report "deprive[d it] of the finality necessary to constitute an acquittal on the murder offenses" (*id.*).

Unlike the jury in *Blueford*, however, the first jury here undeniably considered only one count—depraved indifference murder—and found the defendant guilty on that count. If, as per *Blueford*, a jury is able to consider a number of counts and

reach a tentative verdict of not guilty as to the top counts, and double jeopardy does not bar a retrial on those counts, I fail to see how the doctrine of "implied acquittal" can prevent defendant's trial on the unconsidered count of intentional murder, particularly in light of the court's charge and the presumption that the jury followed it.

In my view, our holding in *People v Jackson* (20 NY2d 440 [1967], *cert denied* 391 US 928 [1968]) is controlling. There, the People presented evidence as to premeditated and deliberate murder (former Penal Law § 1044 [1]) and felony murder (former Penal Law § 1044 [2]), and the jury convicted the defendant of the former count, with said conviction being vacated on appeal and remanded for a new trial. At retrial, over the defendant's objection on double jeopardy grounds, the court allowed the People to admit evidence relative to the felony murder count, and the jury found him guilty of that count. On appeal, this Court held that the first jury's silence relative to the felony murder count did not have "the effect of acquitting [the defendant] on that theory" since such silence would have only had that effect if the jury "were given a full opportunity to consider the felony murder theory" (*id.* at 452). And because the court instructed the jury, without exception, to *"render only one of the [two] verdicts"* and to *"render one verdict; one or the other, not both,"* there was no reason for it "to consider the felony murder charge once it found the defendant guilty of premeditated murder" (*id.*). We acknowledged that because the trial court instructed the jury that it was free to choose whichever theory to consider first it was certainly "possible that the jury considered felony murder first and acquitted him of that theory but under the single verdict charge[,] the jury was not able to express an acquittal, and to say that the defendant was so acquitted would be to engage in mere speculation" (*id.*).

So, too, in this case. The first jury was given the choice of deciding which count to address first, and it considered the depraved indifference murder count, never reaching the intentional murder count. To presume that the jury reached the intentional murder count is not only speculative, but runs counter to our well-settled precedent that the jury is presumed to have followed the trial court's instructions. Thus, in my view, the first jury could not be said to have "impliedly" acquitted defendant of intentional murder, and therefore I would affirm the order of the Appellate Division.

In sum, we have a defendant twice convicted of a homicide he undoubtedly committed and twice having his conviction

overturned on grounds that can only be described as technical. If law enforcement is puzzled as to what to do next, we shouldn't be surprised.

Chief Judge LIPPMAN and Judges CIPARICK, GRAFFEO and SMITH concur with Judge JONES; Judge PIGOTT dissents and votes to affirm in a separate opinion in which Judge READ concurs.

Order reversed, etc.